**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE KARA M. WESTERCAMP, JUDGE**

| | |
|---|---|
| BIO-LAB, INC., ET AL.<br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES,<br>*Defendant,*<br>AND<br><br>JUANCHENG KANGTAI CHEMICAL CO., LTD. AND HEZE HUAYI CHEMICAL CO., LTD.,<br>*Defendant-Intervenors.* | Ct. No. 26-02738 |

**ORDER**

Upon consideration of Plaintiffs Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation's Rule 56.2 Motion for Judgment Upon the Agency Record and the supporting Memorandum of Law, all responses thereto, and all other papers and proceedings in this action, it is hereby:

ORDERED that Plaintiffs' Motion for Judgment Upon the Agency Record is granted; and it is further

ORDERED that the final results of the Department of Commerce's administrative review of the antidumping duty order covering chlorinated isos from China, *Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2023-2024*, 91 Fed. Reg. 11954 (Mar. 11, 2026), are remanded to Commerce for further proceedings for the agency to:

(1) Reconsider whether record evidence supports Commerce's conclusion that mandatory respondents Heze Huayi Chemical Co. Ltd. ("Heze Huayi") and Juancheng Kangtai

Chemical Co. Ltd. ("Kangtai") recovered all VAT payments made for exports of subject merchandise to the United States and therefore that no adjustment to U.S. price was warranted; and

(2) Reconsider whether record evidence supports the finding that Heze Huayi received free-of-charge packing materials from U.S. customers during the period of review and was therefore entitled to an adjustment to U.S. price.

**SO ORDERED.**

Dated: ______________________
New York, New York

______________________
Kara M. Westercamp, Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE KARA M. WESTERCAMP, JUDGE**

| | | |
|---|---|---|
| BIO-LAB, INC., ET AL.<br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES,<br>*Defendant,*<br>AND<br><br>JUANCHENG KANGTAI CHEMICAL CO., LTD. AND HEZE HUAYI CHEMICAL CO., LTD.,<br>*Defendant-Intervenors.* | ) | Ct. No. 26-02738<br><br>**NONCONFIDENTIAL VERSION**<br>Business Proprietary Information Removed from Brackets on Pages i, 1, 3, 5-9, 14-16, and Appendix. |

**MEMORANDUM OF LAW AND FACT**
**IN SUPPORT OF PLAINTIFFS' RULE 56.2 MOTION**
**FOR JUDGEMENT ON THE AGENCY RECORD**

James R. Cannon Jr.
Nicole Brunda
CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave, N.W., Suite 300
Washington, D.C. 20037
(202) 567-2300

*Counsel to Plaintiffs Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation*

Date: October 16, 2026

# Table of Contents

**Page**


STATEMENT PURSUANT TO RULE 56.2 .... 1

I. Administrative Determination Under Review .... 1

II. Issues Presented and Summary of Argument .... 1

III. Request for Relief .... 3

STATEMENT OF FACTS .... 3

A. Unrecovered VAT .... 3

B. Packaging .... 6

STANDARD OF REVIEW .... 8

ARGUMENT .... 9

I. Commerce's Decision that All of Respondents' VAT Payments Were Recovered on Export Was Unsupported by Substantial Evidence .... 9

A. Tax Records of Heze Huayi and Kangtai During the POR Showed that VAT Refunds Received during the POR Were [ ] Below 13 Percent of Export Sales .... 9

B. Commerce Otherwise Relied on Information from One Third-Party Website that Was Contradicted by Information from a Another Third-Party Website .... 12

II. Commerce's Determination that Heze Huayi Received Free Packing Material Was Not Supported by Record Information Concerning Sales in the Current Review .... 14

CONCLUSION .... 17

# Table of Authorities

Statutes

5 U.S.C. § 706 ........ 8

19 U.S.C. § 772(c)(2)(B) ........ 3

19 U.S.C. § 1516a(b)(1)(B) ........ 8

28 U.S.C. § 2640(b) ........ 8

Regulations

19 C.F.R. § 351.102(b)(21) ........ 12

19 C.F.R. § 351.301 ........ 12

49 C.F.R. Parts 171-180 ........ 16

Court Decisions

*Apex Frozen Foods Private Limited v. United States*, 144 F.Supp.3d 1308 (Ct. Int'l Trade 2016) ........ 11

*Consol. Edison Corp. v. NLRB*, 305 U.S. 197 (1938) ........ 8

*Diamond Sawblades Manufacturers' Coalition v. United States*, 301 F.Supp.3d 1326 (Ct. Int'l Trade 2018) ........ 3-4

*Guizhou Tyre Co., Ltd. v. United States*, 389 F.Supp.3d 1350 (Ct. Int'l Trade 2019) ........ 4

*Industrial Fasteners Group, Am. Importers Ass'n v. United States*, 710 F.2d 1576 (Fed. Cir. 1983) ........ 16-17

*Jacobi Carbons AB v. United States*, 222 F.Supp.3d 1159 (Ct. Int'l Trade 2017) ........ 3

*Jiangsu Alcha Aluminum Co., Ltd. v. United States*, 712 F.Supp.3d 1376 (Ct. Int'l Trade 2024) ........ 11

*Jiaxing Bro. Fastener Co., Ltd. v. United States*, 822 F.3d 1289 (Fed. Cir. 2016) ........ 15

*Matsushita Elec. Indus. Co. Ltd. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ........ 8

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ........ 8

*Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. v. United States*, Slip. Op. 26-84, Consol. Court No. 24-00262 (Ct. Int'l Trade Jul. 29, 2026) ........ 4

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006) ........ 14

*Pirelli Tyre Co., Ltd. v. United States*, 638 F.Supp.3d 1361 (Ct. Int'l Trade 2023) ........ 12, 17

*Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378 (Fed. Cir. 2014) ........ 11, 15

*Sureamerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) ........ 14

*Tianjin Magnesium Int'l Co. v. United States*, 722 F. Supp. 2d 1322 (Ct. Int'l Trade 2010) ........ 8, 13

*Trust Chem Company Limited v. United States*, 791 F.Supp.2d 1257 (Ct. Int'l Trade 2011) ........ 15

*United States v. Eurodif S.A.*, 555 U.S. 305 (2009) ........ 7-8

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ........ 8

*Zenith Electronics Corp. v. United States*, 988 F.2d 1573 (Fed. Cir. 1993) ........ 16

<u>Administrative Determinations</u>

*Certification of Factual Information To Import Administration During Antidumping and Countervailing Duty Proceedings*, 78 Fed. Reg. 42678 (Jul. 17, 2013) ........ 11

*Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review*; 2023-2024, 91 Fed. Reg. 11954 (Mar. 11, 2026) ........ *passim*

*Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, and Final Determination of No Shipments*; *2018-2019*, 86 Fed. Reg. 22932 (April 30, 2021) ........ 15

*Chlorinated Isocyanurates From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review*; 2023-2024, (Oct. 3, 2025) ........ 1, 4, 5

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation (hereinafter "Bio-Lab, IWC, and OxyChem" or "Plaintiffs"), respectfully submit the following memorandum of law and fact in support of their motion for judgment on the agency record.

**STATEMENT PURSUANT TO RULE 56.2**

## I. Administrative Determination Under Review

Bio-Lab, IWC, and OxyChem are domestic producers of Chlorinated isocyanurates ("Chlor isos") and challenge certain aspects of the final results of Commerce's 2023-2024 antidumping duty administrative review of Chlor isos from the People's Republic of China. *See Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2023-2024*, 91 Fed. Reg. 11954 (Mar. 11, 2026) ("*Final Results*") (P.R. 8) and accompanying Issues and Decision Memorandum ("IDM") (P.R. 9); *Chlorinated Isocyanurates From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2023-2024*, (Oct. 3, 2025) ("*Preliminary Results*") (P.R. 35) and accompanying Decision Memorandum ("PDM") (P.R. 36).[1]

## II. Issues Presented and Summary of Argument

**(1)** Whether Commerce's decision not to adjust the U.S. net price for irrecoverable VAT was supported by substantial evidence, where the company records submitted by Chinese producers indicated that the amount of VAT refunds were [ ] less than the value of its exports and where the record otherwise contained contradictory evidence concerning the applicable VAT refund rate?

[1] All citations to the administrative record take the form "P.R.__" or "C.R.__".

No. In its *Final Results*, Commerce determined that mandatory respondents Heze Huayi Chemical Co. Ltd. ("Heze Huayi") and Juancheng Kangtai Chemical Co. Ltd. ("Kangtai") did not incur any costs for VAT paid on raw material inputs for the production of the subject merchandise, Chlor isos, during the period of review ("POR"). As a result of this finding, Commerce did not adjust the reported U.S. net price to account for VAT payments that were not recovered upon exportation of Chlor isos. However, the VAT tax returns submitted by Heze Huayi and Kangtai showed that the VAT refunds recovered by Heze Huayi and Kangtai on exports of chlor isos were less than 13 percent of the value of those exports. As such, the evidence of actual VAT refunds obtained on exports by the Chinese respondents and recorded in the company records of each respondent, contracted the conclusion that the 13 percent VAT imposed on inputs into the production process was fully offset by a 13 percent rebate upon exportation of the finished Chlor isos. Moreover, neither Heze Huayi nor Kangtai submitted copies of any official Chinese government measure providing for a 13 percent VAT rebate. Otherwise, the record included conflicting evidence whether the VAT rebate was equal to 13 percent or 10 percent of the value of Cholor isos exports. For these reasons, the substantial record evidence did not support Commerce's finding that the 13 percent VAT imposed on inputs into the production of Chlor isos was fully rebated upon exportation of the subject merchandise.

**(2)** Whether Commerce's failure to adjust normal value for the cost of certain packing materials was supported by substantial evidence where the record included no direct evidence that such materials were provided free-of-charge and where Commerce relied entirely on its own decisions in prior reviews without evidence from the subject POR?

No. In its *Final Results*, Commerce adjusted Heze Huayi's U.S. prices to account for free-of-charge packing materials that Heze Huayi claimed to receive from U.S. customers during the POR. However, Commerce's determination was based almost entirely on determinations of Commerce in prior administrative reviews, which covered wholly different time periods. The

information supplied by Heze Huayi in this review was limited to a [ ] inventory journal ledger that evidenced receipt of [ ] but did not otherwise identify the source of the materials or whether there was an acquisition cost. Such information does not constitute substantial evidence that Heze Huayi received free-of-charge packing materials from U.S. customers during this administrative review period, and thus cannot support Commerce's adjustment to U.S. price.

## III. Request for Relief

Plaintiffs request that this Court hold Commerce's *Final Results* unsupported by substantial evidence and remand Commerce's determination with instructions to (1) reconsider whether record evidence supports Commerce's conclusion that respondents did not incur VAT costs of exports of subject merchandise to the United States as a result of an insufficient VAT refund, and (2) reconsider whether record evidence supports the finding that Heze Huayi received free-of-charge packing materials from U.S. customers during the POR and was therefore entitled to an adjustment to U.S. price.

## STATEMENT OF FACTS

### A. Unrecovered VAT

As Commerce explained in its *Preliminary Results*, Commerce's standard practice in calculating EP and CEP in NME cases is to subtract from the gross U.S. sales price the amount of any unrefunded (irrecoverable) VAT, as Commerce considers this to be an export tax, duty, or other charge on subject merchandise pursuant to section 772(c)(2)(B) of the Act.[2] PDM (P.R.

[2] Petitioners note that this remains Commerce's standard practice despite conflicting Court opinions as to the validity of this practice. For example, in *Jacobi Carbons AB v. United States*, 222 F.Supp.3d 1159, 1188 (Ct. Int'l Trade 2017), this Court found the Commerce's practice of accounting for irrecoverable VAT as an "other charge" imposed on export was a permissible

36) at 18. In its initial questionnaire, Commerce requested that mandatory respondents Heze Huayi and Kangtai report the amount of irrecoverable (un-refunded) input VAT paid on inputs used to produce subject merchandise sold to the United States. *See, e.g.*, Initial Questionnaire to Kangtai (Aug. 27, 2024) (P.R. 115) at C-24 to C-25. Commerce also requested that Heze Huayi and Kangtai provide *inter alia* (a) copies of relevant Chinese laws and regulations that explain "in detail" the workings of the Chinese VAT system, specifically with respect to VAT collection, remittance, and refund processes for inputs consumed in the production of subject merchandise, (b) the input VAT tax rate paid on inputs used to product subject merchandise, (c) the VAT recovery rate (i.e., refund rate) on exports of subject merchandise and the value basis to which it is applied, and (d) fully translated copy of all VAT tax returns filed with the Government of China ("GOC") during the period of review ("POR"). *Id.*

In response, Heze Huayi and Kangtai provided copies of (a) GOC regulations indicating that the current input VAT tax rate is 13 percent,[3] (b) a printout from an unidentified website indicating that the VAT export tax refund rate for trichloroisocyanuric acid, the type of Chlor

---

construction of the statute that was consistent with Commerce's obligation to calculate accurate tax-neutral dumping margins. *See also, e.g., Diamond Sawblades Manufacturers' Coalition v. United State*s, 301 F.Supp.3d 1326, 1331-39 (Ct. Int'l Trade 2018). However, in other cases this Court has reached a different conclusion. *See, e.g.*, *Guizhou Tyre Co., Ltd. v. United States*, 389 F.Supp.3d 1350, 1370 (Ct. Int'l Trade 2019). The Federal Circuit has not opined on this issue, and Commerce continues to follow its established practice in adjusting U.S. price for unrecovered VAT. *See, e.g.*, *Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. v. United States*, Slip. Op. 26-84, Consol. Court No. 24-00262, 2026 WL 2199473 at *13 (Ct. Int'l Trade Jul. 29, 2026) ("Commerce's practice in calculating export price or constructed export price in NME cases is to subtract from the gross U.S. sales price the amount of any un-refunded VAT.") Regardless, neither Heze Huayi or Kangtai challenged Commerce practice in the underlying proceeding and, as noted, Commerce itself confirmed in this proceeding that its standard practice in NME proceedings continues to be to deduct the amount of any unrefunded (irrecoverable) VAT from U.S. price. PDM (P.R. 36) at 18.

[3] Petitioners note that the VAT input rate of 13 percent is not in dispute in this appeal.

isos produced by respondents, was 13 percent, and (c) copies of VAT tax returns filed with the GOC during the relevant POR. Heze Huayi CQR (Oct. 25, 2024) (P.R. 100, C.R. 79) at 5, 31 and Exhibits C-2, C-3, and C-4; Kangtai CQR (Oct. 25, 2024) (P.R. 101, C.R. 96) at 5, 29 and Exhibits C-2, C-3, and C-4. In response, Petitioners submitted information from tradecustoms.com, accessed on October 31, 2024, showing that the VAT export tax refund rate for trichloroisocyanuric acid was only 10 percent. Petitioners' RFI Submission (Nov. 5, 2024) (P.R. 98, C.R. 72) at Attachment 1.

Commerce subsequently asked both Heze Huayi and Kangtai to provide additional support that the VAT export refund rate was 13 percent during the POR. Heze Huayi Supp. Questionnaire (Jul. 17, 2025) (P.R. 63, C.R. 61) at 4; Kangtai Supp. Questionnaire (Jul. 17, 2025) (P.R. 64, C.R. 60) at 4. Heze Huayi and Kangtai responded with an updated copy of the printout originally provided in Exhibit C-3, showing the source was a third-party tax website (*i.e.* cess.tax360.com.cn...) last accessed on July 18, 2025. Heze Huayi SQR2 (Jul. 31, 2025) (P.R. 55, C.R. 53) at 3-4 and Exhibit SQ2-5; Kangtai SQR2 (Jul. 31, 2025) (P.R. 56, C.R. 55) at 1 and Exhibit SQ2-3. Neither Heze Huayi nor Kangtai provided any official GOC regulation or measure or any similar documentation from a GOC website to establish the official Chinese VAT refund rate in effect during the POR.

In its *Preliminary Results,* Commerce determined that information placed on the record by respondents demonstrated that both standard VAT levy and the applicable VAT refund rate were 13 percent during the POR, and concluded that no adjustment was needed for unrecovered VAT. PDM (P.R. 36) at 18-19. In their administrative case brief, Petitioners pointed out that the VAT tax returns filed by Heze Huayi and Kangtai, which showed that the VAT refunds actually received by the respondents were [ ] below 13 percent of the value of export sales

during the POR, and that Commerce's preliminary decision otherwise failed to address the conflicting record evidence showing the applicable VAT refund rate to be only 10 percent. Petitioners Case Brief (Nov. 17, 2025) (P.R. 23, C.R. 22) at 5-9.

In its *Final Results*, Commerce continued to find that no adjustment to the U.S. net price calculation was necessary, as "information submitted on the record by the respondents is consistent with their claim of a 13 percent refund." IDM (P.R. 9) at 6. Commerce ignored the VAT tax returns filed by Heze Huayi and Kangtai, as well as the lack of any official GOC regulations, measures, or other documentation to show the amount of VAT refund rate or the methodology used to calculate that rate. As discussed below, Commerce's conclusions are unsupported by substantial evidence as they are inconsistent with the actual books and records of the Chinese producers, unsupported by any official GOC regulation or measure, and, at best, rely on a VAT refund rate published on a third-party tax website that is contradicted by other record evidence.

**B. Packaging**

In its initial questionnaire response, Heze Huayi claimed that its "U.S. customers provided [ ] to Huayi for packing," which the U.S. customers purportedly purchased from [ ]. Heze Huayi DQR (Oct. 25, 2024) (P.R. 100, C.R. 90) at 6. In a supplemental questionnaire, Commerce asked Heze Huayi to provide proof that the [ ] from [ ] were provided free of charge during the POR. DOC Supp. Questionnaire (Jul. 17, 2025) (P.R. 63, C.R. 61) at 5. In response, Heze Huayi stated that because they were provided free of charge, the [ ] "were not accounted {for} in Heze Hyayi's accounts." Heze Huayi SQR2 (Jul. 31, 2025) (P.R. 55, C.R. 53) at 4. In other words, Heze Huayi claimed that the *absence of*

*any financial accounts showing payment* for the packaging materials is evidence that the materials were provided for free. Heze Huayi claimed that it kept "separate warehouse journals to record the receipts and consumption of [ ] received from and used for each U.S. customer" and provided a "sample warehouse journal" for one unidentified U.S. customer during the POR. *Id*. at 4 and Exhibit SQR2-7. However, the [ ] journal was [ ] and did not indicate that the [ ] listed in the journal were provided free of charge.

The lack of such information is critical because Heze Huayi elsewhere indicated that it purchased [ ] during the POR. *Id*. at Exhibit SQR2-7. And, although Heze Huayi claimed that the "[ ] provided by U.S. customers are separately stored from the [ ] purchased by Heze Huayi itself," *id*. at 4, it failed to provide any record evidence to support this claim or otherwise established that the allegedly free-of-charge packaging materials could be directly traced to the Chlor isos exported to the United States.

In its *Final Results*, Commerce nevertheless adjusted Heze Huayi's export prices to account for "free-of-charge packing materials provided to Heze Huayi by its U.S. customers." IDM (P.R. 9) at 10. Ignoring that the evidence submitted in this review was [ ] and did not show that free materials were recorded in a separate warehouse journal, Commerce instead relied on "verified information provided in prior reviews of this proceeding." *Id*. However, Commerce's own findings based on evidence found in the records of separate administrative reviews are not evidence of the facts in this review. As such, Commerce's adjustment for allegedly free-of-charge packing materials was not supported by substantial evidence.

## STANDARD OF REVIEW

In appeals of antidumping duty determinations, this Court will hold Commerce's determination unlawful if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B); *see also* 28 U.S.C. § 2640(b); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) (citing the Administrative Procedures Act at 5 U.S.C. § 706). To determine whether the agency's decision is supported by substantial evidence, the Court examines whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Corp. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla" and "must into account whatever in the record fairly detracts from its weight." *Id*. at 477, 488. The substantial evidence standard also requires Commerce to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Tianjin Magnesium Int'l Co. v. United States,* 722 F. Supp. 2d 1322, 1328 (Ct. Int'l Trade 2010) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, (1983)). In sum, substantial evidence review requires the Court to determine whether the evidence and reasonable, evidence-based inferences support Commerce's findings. *See Matsushita Elec. Indus. Co. Ltd. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

## ARGUMENT

### I. Commerce's Decision that All of Respondents' VAT Payments Were Recovered on Export Was Unsupported by Substantial Evidence

#### A. Tax Records of Heze Huayi and Kangtai During the POR Showed that VAT Refunds Received during the POR Were [ ] Below 13 Percent of Export Sales

To support a claim that VAT refunds fully reimburse VAT payments made on the purchase of inputs to the production process, Commerce requests copies of relevant Chinese laws and regulations, as well as copies of all VAT tax returns filed with the GOC during the relevant POR. *See, e.g.*, Initial Questionnaire to Kangtai (Aug. 27, 2024) (P.R. 115) at C-24 to C-25. In response, Heze Huayi and Kangtai supplied copies of the Chinese regulations imposing a 13 percent VAT on inputs purchased by the companies. Heze Huayi CQR (Oct. 25, 2024) (P.R. 100, C.R. 79) at Exhibit C-2; Kangtai CQR (Oct. 25, 2024) (P.R. 101, C.R. 96) at Exhibit C-2. However, as discussed in Section B, *infra*, neither respondent submitted a copy of the Chinese regulations showing the VAT refund paid upon exportation.

In addition to the Chinese regulations identifying the 13 percent VAT imposed on raw material purchases, both Heze Huayi and Kangtai submitted copies of their VAT tax returns for the POR. These returns showed that the VAT export rebates received by both companies were [ ] less than 13 percent of the value of merchandise exported. Heze Huayi CQR (Oct. 25, 2024) (P.R. 100, C.R. 79) at Exhibit C-4; Kangtai CQR (Oct. 25, 2024) (P.R. 101, C.R. 96) at Exhibit C-4. As shown in Petitioners Case Brief, using the VAT tax return submitted by Heze Huayi and Kangtai, Heze Huayi received VAT export tax rebates equal to [ ] percent of its export sales revenue and Kangtai received rebates equal to [ ] percent of its export sales revenue. Petitioners' Case Brief (Nov. 17, 2025) (P.R. 23, C.R. 22), Attachments 1, 2; *see*

*also* Heze Huayi CQR (Oct. 25, 2024) (P.R. 100, C.R. 79) at Exhibit C-4; Kangtai CQR (Oct. 25, 2024) (P.R. 101, C.R. 96) at Exhibit C-4.[4]

In its *Final Results*, Commerce ignored the VAT tax returns submitted by Heze Huayi and Kangtai, as well as the lack of any Chinese regulations or measures specifying the current VAT refund rate. With respect to the tax returns, Commerce concluded that the Petitioners had miscalculated the VAT refund rate in their case brief. IDM (P.R. 9) at 6 ("the rebate amounts claimed by the petitioners are inaccurate based on the petitioners' incorrect calculation of refundable VAT amount"). However, Commerce did not point to any record evidence showing the methodology that should be used to calculate the VAT refund rate.

Having dismissed the VAT tax returns as evidence, Commerce instead relied on arguments made by respondents' counsel in their rebuttal brief. IDM (P.R. 9) at 6 (citing Respondents' Rebuttal Brief (Dec. 8, 2025) (P.R. 16) at 4-7). Thus, Commerce found: "the respondents have satisfactorily explained how their calculations are consistent with a full refund of all their so-called input VAT, resulting in no VAT cost upon export based upon an arithmetic calculation enumerated by the respondents, and corroborating the reported VAT refund rates previously placed on the record." IDM (P.R.9) at 6. However, the VAT tax returns at best only indicate a [ ] rebate of the VAT tax and there is otherwise no support for the use of a different methodology on the record or in the rebuttal brief submitted by Heze Huayi and Kangtai. *Id.*, n. 24. Neither the IDM nor the Respondents' rebuttal brief itself cite any record

---

[4] Petitioners note that the tables provided in Attachments 1-2 of their administrative case brief were based on [ ]. Petitioners' Case Brief (Nov. 17, 2025) (P.R. 23, C.R. 22), Attachments 1, 2. However, if the rates are instead calculated using the [ ] data, Heze Huayi and Kangtai received VAT export tax refunds equal to [ ] percent and [ ] percent, respectively, as shown in the tables included as an appendix to this brief.

evidence or exhibit to support the Respondents' assertions.

The unsupported narrative claims of respondents' counsel are not factual evidence.[5] *See, e.g., Certification of Factual Information To Import Administration During Antidumping and Countervailing Duty Proceedings*, 78 Fed. Reg. 42678, 42690 (Jul. 17, 2013) (explaining that arguments of parties made in case and rebuttal briefs are not factual information and thus do not have a certification requirement). As noted above, Commerce specifically asked Heze Huayi and Kangtai to provide all "relevant laws and regulations that explain in detail the Chinese VAT system, in particular with respect to VAT collection, remittance, and refund processes for inputs consumed in production of the subject merchandise, and describe the tax reporting requirements to the Chinese Government." *See* Initial Questionnaire (Aug. 27, 2024) (P.R. 115) at C-24. Heze Huayi and Kangtai did not do so and indeed their rebuttal brief cited no Chinese regulation on the record identifying the VAT refund rate, explaining the process for claiming a refund, showing that VAT refunds "are traced on transaction bases," or otherwise showing the amount of VAT paid on inputs which allegedly "capped" the VAT refund on exports. *See* Respondents' Rebuttal Brief (Dec. 8, 2025) (P.R. 16) at 5-6.

To the extent factual evidence necessary to understand Huayi and Kangtai's VAT tax returns is missing from the record, that is respondents' responsibility. *See, e.g., Jiangsu Alcha Aluminum Co., Ltd. v. United States*, 712 F.Supp.3d 1376, 1388 (Ct. Int'l Trade 2024) (citing *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1386 (Fed. Cir. 2014)) ("The

---

[5] Moreover, to the extent Commerce considered respondents' proffered explanations to be "factual evidence" of how the Chinese VAT system works, it should have been rejected as the deadline to submit new factual information had long passed. *See Apex Frozen Foods Private Limited v. United States*, 144 F.Supp.3d 1308, 1337-38 (Ct. Int'l Trade 2016) (upholding Commerce's rejection of respondents' case brief when it contained untimely filed new factual information not submitted within Commerce's regulatory deadlines).

parties bear the burden to build an adequate record before the agency and suffer the consequences should they fail to do so."); *cf. Pirelli Tyre Co., Ltd. v. United States*, 638 F.Supp.3d 1361, 1378 (Ct. Int'l Trade 2023) (holding that Commerce's rejection of respondent's unsupported interpretations of Italian law was reasonable when the respondent failed to provide Commerce with the relevant portions of that law). Commerce cannot conclude that parties "explained satisfactorily" the record without the support of substantial evidence.

Ultimately, Commerce's conclusions are based on respondents' unsupported assertions about the workings of the Chinese VAT system. Such assertions do not constitute factual information within the meaning of 19 C.F.R. § 351.102(b)(21) and 19 C.F.R. § 351.301 and are not an adequate or rational basis for disregarding the VAT tax returns submitted by Heze Huayi and Kangtai and instead relying on assertions by counsel.

**B. Commerce Otherwise Relied on Information from One Third-Party Website that Was Contradicted by Information from a Another Third-Party Website**

The record of this review contains conflicting information as to the Chinese VAT export tax refund rate for trichloroisocyanuric acid (one type of Chlor Isos) applicable during the POR. On the one hand, Heze Huayi and Kangtai submitted a printout from a third-party tax website, accessed after the POR on July 18, 2025, indicating the Chinese VAT tax export refund rate for trichloroisocyanuric acid was 13 percent. Heze Huayi SQR2 (Jul. 31, 2025) (P.R. 55, C.R. 53) at 3-4 and Exhibit SQ2-5; Kangtai SQR2 (Jul. 31, 2025) (P.R. 56, C.R. 55) at 1 and Exhibit SQ2-3. On the other hand, Petitioners submitted a printout from a different third-party logistics company website, also accessed after the POR on October 31, 2024, indicating that the Chinese VAT tax export refund rate for trichloroisocyanuric acid was 10 percent. Petitioners' RFI Submission (Nov. 5, 2024) (P.R. 98, C.R. 72) at Attachment 1.

In the *Final Results*, Commerce's discussion of this conflicting evidence was limited to a single sentence in which it claimed that the information submitted by Heze Huayi and Kangtai was superior because it "is consistent with their claim of a 13 percent refund, whereas the information submitted on the record by the petitioners of a smaller refund of 10 percent is undated and from the website of a third-party logistics company." IDM (P.R. 9) at 6.

Commerce's cursory conclusion is unsupported by substantial evidence as it fails to provide "a rational connection between the facts found and the choice made." *Tianjin Magnesium*, 722 F. Supp. 2d at 1328 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43)). Commerce discounted Petitioners' information because it was "from the website of a third-party logistics company," *id*., even though the information provided by Heze Huayi and Kangtai was also from a third-party website (*i.e.* https://cess.tax360.com.cn/cloud/pages/detail.html...), *see* Heze Huayi SQ2R (Jul. 31, 2025) (P.R. 55, C.R. 53) at 3-4 and Exhibit SQ2-5; Kangtai SQ2R (Jul. 31, 2025) (P.R. 56, C.R. 55) at 1 and Exhibit SQ2-3. Commerce cited no evidence and provided no explanation why the information from one third-party website was superior to information from another.

Commerce's claim that the website provided by Petitioners is inferior because it is "undated" is similarly flawed. Commerce failed to explain why the undated website provided by Heze Huayi and Kangtai is in any way superior to the undated website provided by petitioners. Both websites provide search tool to identify the applicable VAT rates for commodities classified under China's HS system and both searches were performed after the POR, as indicated by the date in the upper left corner of the website printouts. *Compare* Petitioners' RFI Submission (Nov. 5, 2024) (P.R. 98, C.R. 72) at Attachment 1 *with* Heze Huayi SQ2R (Jul. 31, 2025) (P.R. 55, C.R. 53) Exhibit SQ2-5 and Kangtai SQ2R (Jul. 31, 2025) (P.R. 56, C.R. 55) at

Exhibit SQ2-3. Moreover, the website provided by petitioners is copyrighted through 2024 (contemporaneous with the POR), while the website provided by Heze Huayi and Kangtai simply states the information is "currently effective" without any copyright information.

Commerce also failed to address that fact that the refund rates indicated by the VAT tax returns of Heze Huayi and Kangtai are [

]. *See* Section A, *supra*. Rather than analyze the record as a whole, Commerce simply selected the website proffered by the Respondents without reasoned explanation. *See, e.g.*, *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (explaining that when determining whether an agency supported its decision with substantial evidence, "{a} reviewing court must consider the record as a whole, including that which 'fairly detracts from its weight'") (citations omitted).

In short, Commerce's conclusion that the "VAT refund rate was 13 percent during the POR" was unsupported by substantial evidence because Commerce failed to address conflicting record evidence that demonstrated the applicable VAT refund rate was only 10 percent. Such self-fulfilling analysis falls short of the substantial evidence standard, which prohibits Commerce from making a determination "merely on the basis of evidence which in and of itself justified {it's conclusion}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Sureamerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994).

## II. Commerce's Determination that Heze Huayi Received Free Packing Material Was Not Supported by Record Information Concerning Sales in the Current Review

It is well established that each administrative review is a distinct proceeding that requires Commerce to separately examine the facts of each record. *See Trust Chem Company Limited v.*

*United States*, 791 F.Supp.2d 1257, 1268 (Ct. Int'l Trade 2011) (internal citations omitted) ("{C}ertainly a determination in one investigation is not binding in the subsequent reviews, as each determination is *sui generis*, consisting of a unique set of variables and relative factors…Commerce's job is to compare the data on the record and provide an explanation that considers the important aspects of the problem presented."); *cf. Jiaxing Bro. Fastener Co., Ltd. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2016) (quoting *Qingdao*, 766 F.3d at 387 ("Commerce is required to base surrogate country selection on the facts presented in each case, and not on grounds of perceived tradition. 'Each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record.'")

Yet, in its *Final Results* Commerce found that it was appropriate to include an adjustment for free-of-charge packing materials that Heze Huayi allegedly received during the 2023-24 POR because it was "consistent with {its} practice in prior reviews." IDM (P.R. 9) at 10 (citing *Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, and Final Determination of No Shipments; 2018-2019*, 86 Fed. Reg. 22932 (April 30, 2021), and accompanying Issues and Decision Memorandum at 10-11). Even if this conclusion was supported by evidence submitted in a past review, the current record contains no evidence establishing that Heze Huayi received [ ] free-of-charge from its U.S. customers, much less that any such free-of-charge [ ] were delivered and stored separately from [ ] that Heze Huayi admits purchasing [ ] during the POR. The record also does not contain any evidence establishing that Heze Huayi is able to trace specific [ ] through inventory to individual export transactions.

The only support provided by Heze Huayi is a [ ]

journal record indicating receipt and consumption of [ ] purportedly "provided by one of the U.S. customers" which the journal identifies as [ ]. Heze Huayi SQR2 (Jul. 31, 2025) (P.R. 55, C.R. 53) at Exhibit SQ2-7. Although Commerce claimed this constituted "contemporary information on the record to substantiate {Heze Huayi's} claims," IDM (P.R. 9) at 10, it does no such thing. Notably, the journal does not identify the source of the [ ] in question, or indicate whether they were purchased or provided free of charge. The journal entry also does not indicate that the referenced [ ] were stored in a separate location from other [ ] purchased from the same or other sources. Nor does it indicate that the [ ] were suitable for use in packaging Chlor isos.[6] Indeed, at best the journal evidences only that [ ] were listed as being held in Heze Huayi's inventory, without any indication of how (and at what price) they were received.

In its *Final Results*, Commerce ignored these issues and, indeed, altogether failed to explain how the inventory journal entry "substantiate{s} {Heze Huayi's} claims" that it received free-of-charge [ ] from its U.S. customers during the POR. IDM (P.R. 9) at 10. Instead, Commerce faults Petitioners for "not provid{ing} any evidence to contradict or cause Commerce to reconsider the respondents' claims regarding this issue." *Id*. Such statements turn Commerce's evidentiary standard on its head. It is well established that "the burden of production should belong to the party in possession of the necessary information." *Zenith Electronics Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993) (citing *Industrial Fasteners Group, Am. Importers Ass'n v. United States*, 710 F.2d 1576, 1582 n. 10

---

[6] It may be noted that packaging for Chlor Isos is regulated by the Department of Transportation and subject to various strength and marking requirements. *See* 49 C.F.R. Parts 171-180; DOT Interpretation Response No. 13-0113 (Alden Leeds, Inc.) (June 19, 2013), *available online at* https://www.phmsa.dot.gov/regulations/title49/interp/13-0113, *last accessed* October 16, 2026.

(Fed.Cir.1983)); *see also Pirelli*, 638 F.Supp.3d at 1378 ("The respondent bears the burden of creating the record for Commerce to review."). This is particularly true where, as here, the party in possession of relevant information (*i.e.* Heze Huayi) is the one requesting that Commerce make an adjustment to its documented U.S. selling prices. In making such a request, the burden was on Heze Huayi to provide record evidence sufficient to establish that it received free-of-charge packing materials from U.S. customers <u>during the current POR</u>. Record evidence on the record of this administrative review does not support Heze Huayi's claims and Commerce's decision to nonetheless grant an adjustment based on its decisions in a prior proceeding, covering a different time period and based on a distinct administrative record, renders its conclusion unsupported by substantial evidence on the record of this review.

## CONCLUSION

For the reasons discussed above, this Court should find Commerce's *Final Results* are not supported by substantial evidence and is otherwise not in accordance with law and should remand this matter to Commerce consistent with the arguments above.

Respectfully submitted,

<u>/s/ James R. Cannon, Jr.</u>
James R. Cannon, Jr.
Nicole Brunda

CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave, N.W.
Suite 300
Washington, D.C. 20037
(202) 567-2300

*Counsel to Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation*

Date: October 16, 2026

## Appendix

**Summary of Amounts Reported on POR VAT Tax Returns Provided by Heze Huayi**
*Source*: Heze Huayi CQR (Oct. 25, 2024) (P.R. 100, C.R. 79) at Exhibit C-4

| VAT Form Row | | | 7 | 11 | 12 | 13 | | |
|---|---|---|---|---|---|---|---|---|
| Description | | | Export sales revenue that applies for VAT refund | Output VAT | Input VAT | Refundable VAT | Ratio of Refundable VAT / Export Sales | |
| | | | a | | | b | =(b/a)*100 | |
| Taxation Period | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |

**Summary of Amounts Reported on POR VAT Tax Returns Provided by Kangtai**

*Source*: Kangtai CQR (Oct. 25, 2024) (P.R. 101, C.R. 96) at Exhibit C-4

| VAT Form Row | | | 7 | 11 | 12 | 13 | | |
|---|---|---|---|---|---|---|---|---|
| Description | | | Export sales revenue that applies for VAT refund | Output VAT | Input VAT | Refundable VAT | Ratio of Refundable VAT / Export Sales | |
| | | | a | | | b | =(b/a)*100 | |
| Taxation Period | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |
| | [ | | | | | | | ] |

**Certificate of Compliance**

The undersigned hereby certifies that the forgoing submission of "Memorandum of Law and Fact in Support of Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record" filed by Plaintiffs on October 16, 2026, contains 5,683 words, including footnotes and appendix tables, and excluding the table of contents, table of authorities, and signature block, according to the word count function of the word-processing system used to prepare this brief. This brief therefore complies with the maximum 14,000 word limitation set forth in the Court's Standard Chambers Procedures.

BY: /s/ James R. Cannon Jr.